IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EDUARDO C. MINA, ) | CV. NO. 07-00061 DAE KSC |
| ) | CR. NO. 02-00209 DAE |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ | |

ORDER DENYING EDUARDO C. MINA'S MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing. After reviewing Petitioner's motion and the supporting and opposing memoranda, the Court DENIES Petitioner's Motion.

BACKGROUND

On May 22, 2002, Petitioner Eduardo C. Mina was indicted for racketeering, Count 1 of the Indictment, conspiracy to commit racketeering, Count 2 of the Indictment, and extortion under color of official right, Counts 9, 33, and 57 of the Indictment.

Trial commenced on April 22, 2004, and Petitioner was found guilty of all charges on May 18, 2004. This Court sentenced Petitioner on May 12, 2005,

calculating the advisory Guidelines range as 63-78 months and sentencing him to a term of 65 months.

Petitioner appealed the judgment to the Ninth Circuit, arguing: 1) the Court improperly denied his motion to suppress statements, 2) the Court erred in allowing evidence of his trip to the Philippines, 3) the Court gave erroneous jury instructions, 4) the prosecutor improperly vouched for the credibility of his witnesses, 5) the evidence supporting the conspiracy charge was insufficient, and 6) the Court's selection of the 2001 version of the Guidelines was erroneous, and its factual findings of the amount of the loss of funds were clearly erroneous. United States v. Andres, 178 Fed. Appx. 736, 738.  The Ninth Circuit affirmed the conviction and sentence on May 8, 2006.  Id. at 742.  The court noted that although Petitioner's statements should have been suppressed as he was in custody at the time of questioning, the admission was harmless error as the remaining evidence was overwhelming.  Petitioner's remaining arguments were rejected by the court. Id.

Petitioner filed the instant motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence on February 6, 2007, based on a claim of ineffective assistance of counsel by his trial attorney, Clifford Hunt ("Counsel").  The government filed its response on April 30, 2007.

## STANDARD OF REVIEW

This Court's review of Petitioner's motion is provided for in 28 U.S.C. § 2255:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Because the scope of collateral attack of a sentence under § 2255 is limited, it does not encompass all claimed errors in conviction and sentencing. United States v. Addonizio, 442 U.S. 178, 185 (1979). If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both <u>cause</u> excusing his procedural default, and <u>actual prejudice</u> resulting from the claim of error. United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993) (citing United States v. Frady, 456 U.S. 152, 168 (1982)). However, the Ninth Circuit recently clarified that the "cause and prejudice" standard is limited to cases in which the petitioner has defaulted and forfeited a claim by failing to comply with a specific procedural rule, such as the Federal Rules of Criminal Procedure. English v. United States, 42 F.3d 473, 478

(9th Cir. 1994). Moreover, it has been the "general rule" in the Ninth Circuit that "constitutional claims may be raised in collateral proceedings even if the defendant failed to pursue them on appeal." Id. at 479 (citing United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984), cert. denied, 470 U.S. 1058 (1985)) (emphasis added). The only exception to this general rule permitting collateral review of constitutional claims is if the government shows the defendant "deliberately bypassed" direct review. Id. at 481.

Under § 2255, the court shall hold an evidentiary hearing on a petitioner's motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The standard for holding an evidentiary hearing is whether the petitioner has made specific factual allegations that, if true, state a claim on which relief could be granted. Schaflander, 743 F.2d at 717. "Merely conclusory statements in a § 2255 motion are not enough to require a hearing." Johnson, 988 F.2d at 945 (citing United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980), cert. denied, 451 U.S. 938 (1981)). The nature of Petitioner's Motion and the record in this case do not call for nor warrant a hearing, nor would a hearing aid the Court in a resolution of the issues presented.

## DISCUSSION

Petitioner argues that Counsel was ineffective by failing to 1) properly advise him during plea bargaining, 2) impeach government witnesses and present available exculpatory evidence, 3) call certain witnesses to testify, and 4) pursue Petitioner's claim that police notes were fabricated. Petitioner's arguments fail.

The United States Supreme Court has interpreted the guarantee of a fair trial in the Sixth Amendment of the United States Constitution to encompass the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 684-685 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that 1) in light of all the circumstances, his counsel's performance was outside the "wide range of professionally competent assistance," by identifying specific material errors or omissions; and 2) his defense was so prejudiced by his counsel's errors that there is a reasonable probability that, but for his counsel's deficient representation, the result of the proceedings would have been different. Id. at 687. To successfully demonstrate ineffective assistance of counsel, the defendant must satisfy both prongs of the test.

The defendant must also overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690; see also Michel v. Louisiana, 350 U.S. 91, 101 (1955) (defendant must overcome presumption of effectiveness, including the possibility that, under the circumstances, the challenged action might be considered sound trial strategy). Judicial scrutiny of counsel's performance must be highly deferential and must take into account the facts of the particular case, viewed at the time of counsel's conduct. See Strickland, 466 U.S. at 689-90.

    A.    Petitioner's Claim that Counsel's Plea Bargaining Advice Constituted Ineffective Assistance

Petitioner claims his counsel provided ineffective assistance of counsel in advisement of plea negotiation. Professional standards require an attorney to communicate plea offers to the client. United States v. Blaylock, 20 F.3d 1458, 1466 (1994). Failure to do so constitutes unreasonable conduct that meets the first prong of the Strickland test. Id. (citing Strickland, 466 U.S. at 687).

In the instant case, Petitioner mistakenly believes that the plea agreement he rejected offered a six-month sentence in return for admission of guilt. He alleges that had Counsel informed him of the possibility of this supposed six-month sentence, he would have accepted the plea agreement. However, Hunt's

declaration establishes the government never offered a six-month sentence in negotiation and that he fully explained the ramifications of pleading or not pleading guilty and the possibility of receiving a lower sentence if Petitioner admitted guilt. (Hunt Decl. ¶ 6-10.) Moreover, Hunt states that regardless of the length of sentence offered in negotiation, Petitioner consistently maintained his innocence throughout plea bargaining, despite the government's considerable evidence to the contrary. Id. at ¶ 9. Factoring in the number of bribes accepted by Petitioner and his co-conspirators, the conduct of co-conspirators, and the total amount of bribes collected by the racket, the government calculates Petitioner's offense level at 26, resulting in a range of 63-78 months – far above the six months Petitioner claims he would have received in the plea agreement. (Gov't. Resp. at 32.) Based on these calculations and the large quantum of evidence against the Petitioner, a six-month sentence would not and was not offered in negotiation and therefore, there was no attorney error in failing to present such an offer. As Petitioner offers no evidence that Counsel did not communicate plea offers, he fails to establish Hunt engaged in unreasonable conduct constituting deficient performance. Blaylock, 20 F. 3d at 1466.

Accordingly, this Court finds that Petitioner failed to establish that Counsel was ineffective in plea bargaining advisement.

B.  Petitioner's Claim that Counsel's Failure to 1) Present Available Exculpatory Evidence, and 2) Impeach Government Witnesses Constituted Ineffective Assistance

Petitioner claims Counsel failed to present taped recordings as exculpatory evidence in the conspiracy and also failed to impeach key government witnesses during trial. Under Strickland, without informed, strategic reason for withholding available exculpatory evidence, counsel's failure to reasonably investigate and introduce evidence at trial constitutes ineffective performance if the defendant can show that were it not for counsel's errors, results would have been different. Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994) (citing Strickland, 466 U.S. at 689). However, the trial judge has broad discretion to exclude evidence on the grounds under Federal Rules of Evidence 403 including "undue delay, waste of time, or needless presentation of cumulative evidence." United States v. Hearst, 563 F.2d 1331, 1349 (9th Cir. 1977) (citing United States v. Hendrix, 549 F.2d 1225, 1230 (9th Cir. 1977)).

In the instant case, Petitioner alleges the tape recordings in question should have been introduced as exculpatory evidence as they contained statements by his co-conspirators indicating his minimal involvement in the conspiracy. However, based on pretrial hearings, Hunt believed he was barred from introducing the tapes as evidence once Petitioner's co-conspirators admitted to

8

making the statements during cross-examination. (Hunt Decl. ¶14); See Id. at 1349.[1] Thus, under the first prong of Strickland, Hunt's decision with regard to presentation of the tapes during trial does not fall "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 694. Indeed, Counsel's use of transcripts of the tapes to remind witnesses during cross-examination of their recorded conversations was effective in compelling witnesses to admit to making the taped statements which attempted to establish Petitioner's minor role in the conspiracy. Petitioner also cannot satisfy the second prong of Strickland as he fails to provide any factual allegation or evidence that he was prejudiced by Counsel's actions. 466 U.S. at 694.

Accordingly, Petitioner's claim that Hunt's failure to introduce exculpatory evidence of his non-involvement with the conspiracy constitutes deficient performance lacks merit.

Petitioner's second claim alleges Hunt did not effectively impeach the testimony of key witness Jennifer Chong, Special Agent (SA) Miles Yamane of the Federal Bureau of Investigation (FBI), or Honolulu Police Department Lieutenant (Lt.) Kathy Campbell.

---

[1] Based on Federal Rules of Evidence 403, the court in Hearst held the playing of taped interviews by the witness would be "cumulative and unnecessary" as the witness had already been extensively questioned by counsel.

Former owner of a hostess bar and admitted participant in the conspiracy, Chong testified during trial that she had paid Petitioner on three occasions. TR. 6-122, 130. Petitioner now argues Hunt did not sufficiently expose Chong's bias. Failure to impeach the testimony of a government witness such as Chong, who gave information on other offenders in exchange for a decreased sentence, would likely fall outside <u>Strickland</u>'s range of "professionally competent assistance." 466 U.S. at 694. However, the records of the instant case indicate Hunt effectively questioned Chong during trial and more than adequately impeached her testimony by compelling admission of her offenses, the deal she negotiated with the government for her cooperation, and that she had not spent any time in jail or even been arrested for her offenses. TR. 6-138. In fact, even the Court noted that Hunt had thoroughly exposed the witness's possible bias due to the benefit she had received. TR. 6-138, 151. Petitioner therefore fails to show deficient performance by Counsel.

Petitioner also claims that Hunt did not impeach SA Yamane and Lt. Campbell with their grand jury testimony, in which they testified that Petitioner's co-conspirators had stated he acted alone and was not a part of the conspiracy. However, this evidence was directly presented during the cross-examination of Petitioner's co-conspirators – investigators Charles Wiggins, Sam Ho, Kenneth

Wright, and William Richardson. TR. 6-40-44, 8-16-19; 7-36-37, 85, 98, 101. Indeed, Hunt's questioning effectively drew testimony from these witnesses that Petitioner was not an active part of the conspiracy and was not even trusted by his alleged co-conspirators. TR. 11-82; 11-99; 11-114. As Petitioner presents no factual allegation or evidence that impeachment of SA Yamane and Lt. Campbell would have changed the outcome of the case or that he was prejudiced by Counsel's actions, he fails to show ineffective assistance of counsel under Strickland, 466 U.S. at 694.

Accordingly, Petitioner's claim that Hunt's insufficient impeachment of testimony by government witnesses Chong, Yamane, and Campbell constitutes deficient performance lacks merit.

C.   Petitioner's Claim that Counsel's Failure to Investigate and Call Certain Witnesses to Testify Constituted Ineffective Assistance

Petitioner claims Counsel's failure to investigate and call certain favorable witnesses, particularly former Mayor of Honolulu Jeremy Harris and supervisor David Lee, alleged leader of the conspiracy, constituted deficient performance. Courts have found that counsel has a duty to act in the best interests of the client by conducting reasonable investigations into possible exculpatory evidence or showing strategic, informed decision making that made an

investigation unnecessary.  <u>Strickland</u>, 466 U.S. at 689.  However, the strength of the government's case is also considered when determining whether counsel has fulfilled his duty to investigate.  <u>Eggleston v. United States</u>, 798 F.2d 374, 376 (9th Cir. 1986).

In the instant case, Hunt's witness selection process was well-informed and founded on reasonable investigation.  Although Petitioner alleges Harris would have provided valuable testimony that he previously reported the corruption at the Liquor Commission to the Mayor's office, Hunt's investigation revealed Harris has no record or recollection of meeting with Petitioner.  (Hunt Decl. ¶11.)  As Petitioner does not provide evidence that Hunt's inquiry into Harris as a potential witness was deficient or that he was prejudiced by Counsel's actions, Hunt's decision to refrain from calling Harris as a witness was reasonable. <u>Strickland</u>, 466 U.S. at 689.

Similarly, Petitioner provides no evidence that testimony by Lee would have changed the outcome of the case.  Petitioner claims that Lee would have been forced to admit he did not trust Petitioner or see him as a co-conspirator.  Yet, regardless of the alleged favorable testimony that Lee would have been able to offer, the record shows Hunt presented ample evidence of Petitioner's alleged minimal involvement in the conspiracy through testimony by investigators

Wiggins, Ho, Wright, and Richardson, all of whom testified that Petitioner was not an active part of the conspiracy.  TR. 6-40-44, 8-16-19; 7-36-37,85, 98, 101.  In fact, due to Hunt's persuasive arguments, the government agreed that he "wasn't the center of the conspiracy."  TR. 11-141.  However, despite Counsel's best efforts, government evidence that Petitioner accepted bribes and received money on at least one occasion from fellow investigator Richardson outweighed defense testimony alleging his noninvolvement in the conspiracy.  TR. 11-141-42, 153-54.  Thus, Hunt's failure to call Lee to the stand was reasonable and did not prejudice Petitioner in light of the government's overwhelming evidence of guilt.

Accordingly, Petitioner's claim fails as he does not provide evidence that Counsel's failure to present these particular witnesses constituted ineffective assistance.

D.   Petitioner's Claim that Counsel's Failure to Pursue Fabrication of Notes Theory Constituted Ineffective Assistance

Petitioner claims Counsel's failure to pursue his theory that notes from a January 30, 2002 police interview were fabricated constituted ineffective assistance of counsel.  Petitioner's claim lacks merit.

Failure to raise a meritless argument does not constitute ineffective assistance.  Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985).  Moreover, a

13

tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel. Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir. 1984) (citing Strickland, 466 U.S. at 690).

In the instant case, Counsel made a genuine effort to follow the wishes of his client while working within the "wide range of professionally competent assistance." Strickland, 466 U.S. at 687. Acting on Petitioner's claims that he was coerced into admitting guilt during his January 30, 2002 police interrogation at the Kalihi police station, Counsel filed a motion to suppress Petitioner's statements. (Hunt's Decl. ¶16.) After the motion was denied, Petitioner then told Counsel the notes were fabricated, insisting Hunt obtain the original notes to determine the accuracy of the notes. (Hunt's Decl. ¶17.) Counsel had never heard of such fabrication of notes during police interrogation and received confirmation from several other experienced criminal defense attorneys that they had also never heard of such a practice nor heard anything negative about the particular officers. (Hunt's Decl. ¶17.) Even so, Hunt requested the notes and later sought authorization for funds to have the notes expertly examined. (Hunt's Decl. ¶20.) During this time, the government offered Petitioner the opportunity to take a FBI polygraph test that would include questions concerning possible coercion to confess during the interrogation as well as whether the police took notes. (Hunt's

14

Decl. ¶21.)  However, before agreeing to the FBI polygraph, Counsel arranged for a defense retained polygraph test which Petitioner failed.  (Hunt's Decl. ¶21-24.)  In light of Petitioner's performance on the defense retained polygraph, Counsel's subsequent decision to decline the government's offer of an FBI administered polygraph test, and withdraw his request for funds to have the notes examined by an expert showed reasonable professional judgment within the bounds competent professional assistance.  (Hunt's Decl. ¶25.)

Although Petitioner argues that Counsel did not consult him before withdrawing the motion for funds for an expert examination of the notes, failure to raise an argument that lacks merit does not constitute deficient performance.  Boag, 769 F.2d at 1344.  Hunt's strategic decision not to pursue the fabrication of notes theory was reasonable in light of Petitioner's failed polygraph test.  Therefore, despite Petitioner's disagreement with Counsel's abandonment of the fabrication claim, a tactical decision by Hunt with which Petitioner disagrees cannot form the basis of a deficient performance claim. Guam, 741 F.2d at 1169.

Accordingly, Petitioner fails to provide evidence that Counsel's failure to pursue the fabrication of notes theory constituted ineffective assistance.

## CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's Motion to Vacate, Set Aside, or Correct Pursuant to 28 U.S.C. § 2255.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 2, 2007,



_____
David Alan Ezra
United States District Judge

Eduardo C. Mina vs. United States of America, Civil No. 07-00061 DAE-KSC, Cr. No. 02-00209 DAE; ORDER DENYING EDUARDO C. MINA'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE